UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


UNITED STATES OF AMERICA

v.                                                    CASE NO. 8:14-cr-140-T-23MAP

THOMAS E. BIDDIX,
KEVIN BRIAN COX a/k/a
        Brian Cox, and
LEONARD I. SOLT
_____/


## **ORDER**

Kevin Brian Cox objects (Doc. 316) under Rule 59(a) to the magistrate judge's order (Doc. 290) denying a motion to compel (Doc. 254) the United States' compliance with an earlier order (Doc. 238) for a bill of particulars. A review of the objection, the response, and the pertinent predecessor papers reveals no demonstration by Cox that the magistrate judge's order is either contrary to law or clearly erroneous (or erroneous at all).

The objection (Doc. 316) is **OVERRULED**.

\* \* \* \* \*

In part III of a document (Doc. 259) that responds in a single paper to several distinct motions (this awkward practice confuses attempts to track motions on the court's electronic docket), the United States requests an order that precludes Biddix from asserting at trial a defense based on the advice of counsel. To support this novel

request, the United States states, "Before indictment, Biddix foreclosed the grand jury from investigating relevant communication by and between him and counsel." (Doc. 259 at 14)  For the reasons stated in part I of Biddix's response (Doc. 303 at pp. 3–8), the motion is **DENIED**.

* * * *

Cox moves (Doc. 275) "to preclude the government from offering any evidence under Rule 404(b) at trial."  Cox asserts that the United States failed to provide "timely and sufficient notice" of the intent to offer evidence under Rule 404(b).  The parties agreed (Doc. 108) that Rule 404(b) disclosures must occur before March 13, 2015.  The United States' disclosure letter identifies "fraudulent misrepresentation made in connection with the Lifeline Program prior to January 2009" by five, named business entities.  Cox asserts that the "bare-bones, excessively broad letter" fails to contain the reasonable notice required by Rule 404(b)(2)(A).

Paragraph five of the Advisory Committee Notes to the 1991 Amendments to Rule 404(b) states, "The court in its discretion may, under the facts, decide that the particular . . . notice was not reasonable, either because of the lack of timeliness or completeness."  Obviously, "reasonable notice" contemplates a useful, even if still generalized, description of the prospective Rule 404(b) evidence.  The United States' disclosure merely identifies the business entity within which a "fraudulent misrepresentation [was] made in connection with the Lifetime Program prior to January 2009."  A statement that, more than this statement, says something rather

than nothing while fully retaining the statement's maximum unhelpfulness is hard to imagine.  If the aim of this statement's drafter was to provide to the defense the minimum permissible disclosure and nothing more, the drafter undershot the mark.  This studiedly obscure disclosure apprises neither the defense nor the court of anything that meaningfully directs the reader's attention to some manageable and practical field of inquiry.

Cox's motion (Doc. 275) is **GRANTED** to the extent that admission of the contested evidence under Rule 404(b) is **DENIED**.

\*\*\*\*

Associated Telecommunications Management Services, LLC moves (Doc. 250) to intervene in the criminal prosecution of Thomas E. Biddix (ATMS's owner), moves for a protective order, and moves for an evidentiary hearing "regarding the government's violations of the attorney-client privilege."  Biddix joins in the motion for a protective order and the motion for a hearing.

The magistrate judge conducted a hearing (Doc. 314) and examined the claimed privileged material *in camera*.  The magistrate judge's October 7, 2015, report (Doc. 361), to which there is no response, (1) finds that "the corporation has neither the standing to intervene nor the grounds to assert the privilege," (2) finds that Biddix "has no authority in any personal capacity to assert ATMS's attorney-client privilege for his own benefit," (3) finds that because "ATMS has no standing to assert the privilege and that none of the statements at issue is covered by the privilege, no

- 3 -

conflict of interest exists, and a rule 44(c) hearing is not required"; and (4) recommends denial of the motion.

In consideration of the motion (Doc. 250) and the responses (Doc. 258, 329), the report and recommendation (Doc. 361) is **ADOPTED**.  The motion (Doc. 250) to intervene, for a protective order, and for a hearing is **DENIED**.

\*\*\*\*

Cox moves (Doc. 276) under Rule 403 to preclude the United States from offering "evidence or argument characterizing Defendants as 'undisclosed owners' (and similar terminology)" of ATMS.  By "similar terminology" Cox means "shadow owners," "secret owners," or another term designed to convey an unspecified but unmistakable air of suspect motive or other general disapprobation. The United States responds (Doc. 308) that the term "undisclosed owner" is an entirely neutral encapsulation of the fact that Cox owned only an option to purchase certain ATMS shares.

The United States over-simplifies.  The term "undisclosed owner" conveys at least the notion of "ownership," which is not the equivalent of holding an option. Saying that someone who owns only an option to purchase is either a purchaser or an owner of the item subject to the option is a deception.  Similarly, the United States' saying in a jury trial that something is "undisclosed" (or "shadow" or "secret") suggests strongly the existence of a duty to disclose.  Therefore, unless the United States can establish an ownership interest in the pertinent shares and some legally

- 4 -

cognizable duty to disclose, the term "undisclosed owner" or an equivalent is confusing and misleading and unnecessarily elongates the proceedings (and is probably argumentative, depending on the circumstance).  The motion (Doc. 276) is **GRANTED** absent the establishment of a proper predicate.

*****

Cox moves (Doc. 277) to "exclude evidence or argument at trial of uncharged conduct relating to taxes."  Again, Cox notes that the evidence is inadmissible if offered under Rule 404(b) because the parties' stipulation required disclosure in March, 2015, and no Rule 404(b) notice of the income tax evidence has appeared. Also, Cox argues (Doc. 277 at 3) that:

> There was nothing secret about how much money ATMS was receiving from USAC. How ATMS or its subsidiaries accounted for Lifeline reimbursements on their tax returns, or how the Defendants accounted for whatever funds they received from these entities on their own personal tax returns, are issues wholly disconnected from Defendants' role in the submission of Forms 497 on behalf of ATMS and its subsidiaries.

Noting that the indictment alleges that as a part of the criminal conspiracy the defendants concealed the proceeds from the Internal Revenue Service and that Count Seven charges money laundering, which is a scheme to disguise criminal proceeds, the United States argues that the tax-related evidence is intrinsic to the criminal scheme and admissible.

- 5 -

Given the allegations of the indictment, the challenged evidence is probative of whether a defendant concealed from the IRS and laundered the proceeds of the allegedly criminal scheme.  Cox's motion (Doc. 277) is **DENIED**.

*****

Cox moves (Doc. 278) "to exclude at trial evidence relating to Defendants' purported wealth, lifestyles, and spending habits."  Cox argues that the prosecution's allusion to these topics during trial presents a toxic appeal to "class prejudice" and presents a "severe risk of unfair prejudice" from an inflamed jury.

The United States responds (Doc. 310) that "spending and wealth evidence" is admissible because the evidence "supports the wire fraud conspiracy and substantive wire fraud counts charged in Counts One through Six, and it is critical to proving the money laundering conspiracy charged in Count Seven."  The United States cites *United States v. Hope*, 608 Fed.Appx. 831 (11th Cir. 2015), in which "wealth evidence" assisted the prosecutor in rebutting the defense that the defendant "did not knowingly commit fraud, but rather [the money received was] the result of billing errors."  608 Fed.Appx. at 839.  Also, *Hope* finds that wealth evidence "goes to Hope's motive to commit the offenses."  The defendant in *Hope* argued that motive was not an element of the offense that the prosecution must prove, but *Hope* dismisses that argument based on *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985), which states:

> Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.

A long line of cases in the Eleventh Circuit and elsewhere reliably recites the fact that "it is often difficult to determine whether wealth evidence is intended to appeal to class bias or to establish a fact in issue."  608 Fed.Appx. 838.  To assist in that determination, *Hope* cites *United States v. Jackson-Randolph*, 282 F.3d 369 (6th Cir. 2002), which includes an instructive selection of illustrative precedents and which includes the following list of "good markers" that inform a ruling under Rule 403 in an instance of proffered wealth evidence:

> [T]he unfair prejudice does not outweigh the probative value if three factors are met: (1) there is other credible evidence, direct or circumstantial, of the illegal activity; (2) the money spent was not available to the defendant from a legitimate source; and (3) the accumulation of great wealth or extravagant spending relates to the period of the alleged illegal activity.

282 F.3d at 378.  Although not an exhaustive list, the *Jackson-Randolph* factors undoubtedly provide a sound foundation for decision.

A review of the facts of *Jackson-Randolph* suggests another factor that will warrant consideration in the usual application.  *Johnson-Randolph* recites the disputed wealth evidence as follows:

> The district court overruled the objections and permitted the government to introduce evidence of Jackson-Randolph's purchases of expensive jewelry, clothing, and several fur coats. The government also presented evidence of Jackson-Randolph's

> trips to Aruba, the Bahamas, Las Vegas, and Atlantic
> City for gambling, where Jackson-Randolph arranged large
> lines of credit prior to arrival. Witnesses also testified to
> Jackson-Randolph's propensity to give away expensive gifts
> such as jewelry, clothing, and trips. A government agent
> estimated her expenditures during the indictment period at
> $3,896,939. This evidence, Jackson-Randolph asserts, was merely
> inflammatory, prejudicial, and irrelevant to any issue in the case.

282 F.3d at 376.

Assuming that the evidence establishes the absence of a "legitimate source" for her money, Johnson-Randolph's spending in the pertinent time $3,896,939 on luxury items is evidence much more clearly probative of a pertinent fact than is evidence of her particular travel destinations (Atlantic City, for example), the exact activity (gambling, for example) she chose after arrival, the exact gifts (jewelry, for example) that she gave, and the like.  Even if the fact of, and the amount of, extraordinary expenditures might fairly evidence the need for, or disposition of, feloniously acquired wealth, the wealth is needed no more to travel to Aruba or Las Vegas than to travel elsewhere.  In other words, the "gory details" of the extraordinary expenditures are typically less probative and more prejudicial than the amount spent or the categories of expenditure (travel, automobiles, clothing and accessories, etc.).  In all events, the United States should present evidence in a dignified and straight-forward manner and without undue attention to a sensational or provocative particular that is more likely to trigger an eruption of "class bias" or other prejudice — in whatever form and by whatever label.

Cox's motion (Doc. 278) is **GRANTED** pending the establishment of a proper predicate consistent with *Jackson-Randolph* and this order.

ORDERED in Tampa, Florida, on December 29, 2015.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE